IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02133-WJM-CBS

MATTHEW TAZIO REDMON,
        Plaintiff,
v.

ARISTEDES W. ZAVARAS, [former] Executive Director CDOC, in his individual
capacity,
CDOC OFFICER CATHIE HOLST, Assistant Director, CDOC Correctional Legal
Services, in her individual capacity,
CDOC OFFICER KEITH NORDELL, Acting Assistant Director, CDOC Correctional
Legal Services, in his official capacity, and
TOM CLEMENTS, Executive Director of the Colorado Department of Corrections, in his
official capacity,
        Defendants.

─────────────────────────────────────────────────────────────────

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

─────────────────────────────────────────────────────────────────

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on "Defendants' Motion for Summary

Judgment" (filed January 14, 2011) (Doc. # 68).  Pursuant to the Order of Reference

dated March 17, 2010 (Doc. # 38) and the memorandum dated January 18, 2011 (Doc.

# 69), this matter was referred to the Magistrate Judge.  The court has reviewed the

Motion, Mr. Redmon's "Motion in Opposition to Defendants' Summary Judgment

Motion" ("Response") and "Plaintiff's Statement of Disputed Factual Issues" (both filed

February 16, 2011) (Docs. # 78 and # 79), Defendants' Reply (filed March 7, 2011)

(Doc. # 86), the exhibits and affidavits, the entire case file, and the applicable law and is

sufficiently advised in the premises.

I.      Statement of the Case

At all times relevant to the claims in this case, Mr. Redmon was incarcerated at

the Colorado Territorial Correctional Facility (CTCF) or the Denver Reception and

Diagnostic Center (DRDC) of the Colorado Department of Corrections (CDOC).  (*See*

Exhibit A-1 to Motion (Doc. # 68-1)).  Mr. Redmon is currently on parole and residing in

Colorado.  (*See id.*).  Mr. Redmon filed his Second Amended Prisoner Complaint

("SAC") on March 1, 2010 pursuant to 42 U.S.C. § 1983.  (*See* Doc. # 33 at p. 6 of 27).

Mr. Redmon named thirteen Defendants in twenty claims related to allegations that his

access to the courts was impaired by the actions and policies of CDOC administrators

and staff.  (*See* Doc. # 33).  On March 11, 2010, United States District Judge Brimmer

dismissed numerous claims and Defendants, leaving Claims One through Three and Six

through Ten to proceed against two Defendants.  (*See* "Order to Dismiss in Part and to

Draw Case to a District Judge and to a Magistrate Judge" (Doc. # 34) at p. 9-10 of 11).

On July 19, 2010, Defendant Nordell was substituted for Defendant Holst in her official

capacity only.  (*See* Courtroom Minutes/Minute Order (Doc. # 60) at p. 2 of 2).  On April

25, 2011, Defendant Clements was substituted for Defendant Zavaras in his official

capacity only.  (*See* Order (Doc. # 91)).  Defendants are or were employees of the

CDOC.  (*See* Doc. # 33 at pp. 3-5 of 27).

In Claims One through Three, Mr. Redmon alleges that Defendant Zavaras

"authoriz[ed] CDOC policy" that violated his rights under the First, Sixth and Fourteenth

Amendments.  (*See* Doc. # 33 at pp. 14-16 of 27).  More specifically, Mr. Redmon

alleges that his rights were violated by the CDOC policy requiring that incoming prisoner

mail from an attorney include on the outside of the envelope the attorney's registration

2

number.  (*See id.*).  In Claims Six through Ten, Mr. Redmon alleges that Defendant

Holst denied him access to Florida case law, in violation of his rights under the First,

Sixth and Fourteenth Amendments.  (*See* Doc. # 33 at pp. 17-18 of 27).  Mr. Redmon

also alleges that Defendant Zavaras either authorized or failed to authorize policies

which limited his access to Florida case law.  (*See id.*).  Defendants move for summary

judgment on all remaining claims based on several grounds.

II.	Standard of Review

	Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56.

Summary judgment is proper "when there is no genuine dispute as to any material fact

and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c).

> Summary judgment is appropriate only if there is no genuine issue
> of material fact and the moving party is entitled to judgment as a matter of
> law.  Whether there is a genuine dispute as to a material fact depends
> upon whether the evidence presents a sufficient disagreement to require
> submission to a jury or conversely, is so one-sided that one party must
> prevail as a matter of law.
> 	A fact is material if it pertains to an element of a claim or defense; a
> factual dispute is genuine if the evidence is so contradictory that if the
> matter went to trial, a reasonable party could return a verdict for either
> party. The court must resolve factual ambiguities against the moving party,
> thus favoring the right to a trial.
> 	The analysis to be applied on a motion for summary judgment
> differs depending on whether the moving party is also the party with the
> burden of proof at trial. Where, as here, the non-movant bears the burden
> of proof at trial, the non-movant must point to specific evidence
> establishing a genuine issue of material fact with regard to each
> challenged element.

*Allen v. Reynolds*, 2011 WL 2174424 * 1-2 (D. Colo. June 3, 2011) (internal quotation

marks and citations omitted).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Hall*, 935 F.2d at 1110 n. 3 (citations omitted). "[S]uch liberal construction is intended merely to overlook technical formatting errors and other defects in Plaintiff's use of legal terminology and proper English." *Allen v. Reynolds*, 2011 WL 2174424 at * 1 (citation omitted). The court cannot be a pro se litigant's advocate. *Yang v. Archuleta*, 525 F. 3d 925, 927 n. 1 (10th Cir. 2008).

As the SAC has been sworn to under penalty of perjury (*see* Doc. # 33 at p. 24 of 27), the court may treat it as an affidavit. *Green v. Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir. 1997). Where the court treats a verified complaint as an affidavit, whether a party's affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that conclusory allegations without specific supporting facts have no probative value." *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (internal quotation marks and citation omitted). *See also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) ("[A] verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e).") (internal quotation marks and citation omitted). "[T]here may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . . , especially when the allegations contained in the pleading are merely conclusory." *Conaway v. Smith*, 853 F.2d 789, 792-93 (10th Cir. 1988). The court must determine whether Mr.

4

Redmon has met his burden of presenting specific facts to overcome Defendants'
Motion.

III.     Analysis

Section 1983 creates a cause of action where a "person . . . under color of any
statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to
be subjected, any citizen of the United States or other person . . . to the deprivation of
any rights, privileges or immunities secured by the Constitution." 42 U.S.C. § 1983.
Section 1983 does not create any substantive rights; rather, it creates only a remedy for
violations of rights secured by federal statutory and constitutional law. *Chapman v.
Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979). *See also Southern
Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998) ("In
order to successfully state a cause of action under section 1983, [Mr. Redmon] must
allege . . . the deprivation of a federal right. . . .") (internal quotation marks and citation
omitted). "To state a claim for relief in an action brought under § 1983," Mr. Redmon
must establish that he was "deprived of a right secured by the Constitution or laws of
the United States, and that the alleged deprivation was committed under color of state
law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

A.     Liability of Defendants Nordell and Clements in their Official Capacities for
       Monetary Damages

Mr. Redmon sues Defendants Nordell and Clements in their official capacities
only. (*See* Docs. # 60, # 91). To the extent that Mr. Redmon is suing Defendants

Nordell and Clements in their official capacities only, he is actually attempting to impose liability on their employer, the CDOC. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state). The CDOC is considered an agency of the State of Colorado. *See* Colo. Rev. Stat. § 24-1-128.5. The Eleventh Amendment provides immunity for state governmental entities sued in federal court for monetary damages under § 1983. *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citation omitted). The Eleventh Amendment confers total immunity from suit, not merely a defense to liability. *Ambus*, 995 F.2d at 994 (citation omitted). Further, states and state officials sued in their official capacities are not "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). To the extent that Mr. Redmon seeks monetary damages from Defendants Nordell and Clements in their official capacities pursuant to § 1983, such claims are properly dismissed with prejudice. (*See* Doc. # 33 at pp. 24-25 of 27).[1]

B.     Liability of Defendants Zavaras and Holst in their Individual Capacities

The Eleventh Amendment does not bar actions for damages against state officials in their individual capacities. *Kentucky v. Graham*, 473 U.S. 159, 164 (1985). To the extent that Mr. Redmon is suing Defendants Zavaras and Holst in their individual capacities, personal capacity suits pursuant to § 1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law.

---

[1]     Claims One through Three and Six through Ten do not contain any specific allegations as to Defendants Nordell and Clements.

*Graham*, 473 U.S. at 165-67.

    1.    Denial of Florida Case Law (Claims Six, Seven, and Ten)

On or about October 27, 2008, Mr. Redmon sent a letter to Defendant Holst

requesting case law from the State of Florida for the purpose of submitting court filings

in Florida case number 2003CF1920.  (*See* Letter to Cathie Holst, Exhibit A-9 to Motion

(Doc. # 68-9);  Plaintiff's Answer to Defendant['s] Interrogatories, Exhibit A-10 (Doc. #

68-10) at p. 3 of 6, Response to Document Request # 1).  On December 4, 2008,

Defendant Holst informed Mr. Redmon that the case law he sought would not be

allowed because the foreign conviction for which he needed the case law did not

enhance the Colorado conviction he was then serving.  (*See* Letter from Cathie Holst

Re: Request for out of state legal materials (Florida case law) Exhibit A-11 to Motion

(Doc. # 68-11) (relying on *Petrick v. Maynard*, 11 F.3d 991, 995 (10th Cir. 1993) (finding

injury where plaintiff unable to consult out-of-state legal materials to formulate collateral

attack on prior out-of-state convictions that were relied on to enhance his sentence in

Oklahoma))).  In Claims Six, Seven, and Ten, Mr. Redmon alleges that Defendant Holst

denied him access to the courts and violated his due process rights and that Defendant

Zavaras "fail[ed] to authorize CDOC policy which would have allowed Redmon to

access out-of-State Case law."  (*See* Doc. # 33 at pp. 17-18 of 27).

Prison inmates have a constitutional right to meaningful access to the courts.

*Bounds v. Smith*, 430 U.S. 817, 823 (1977).  "[P]rison officials may not affirmatively

hinder a prisoner's efforts to construct a nonfrivolous appeal or claim."  *Green v.*

*Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992).  "Any deliberate impediment to access

[to the courts], even a delay of access, may constitute a constitutional deprivation." *Id.* (internal quotation marks and citation omitted).  An allegation of denial of access to the courts is viewed as an aspect of the freedom of petition clause of the First Amendment, *Harrison v. Springdale Water and Sewer Comm'n*, 780 F.2d 1422, 1427 n. 7 (8th Cir. 1986), as guaranteed by the Fourteenth Amendment.  *See Bounds v. Smith*, 430 U.S. at 822  (The Due Process Clause of the Fourteenth Amendment guarantees state inmates the right to "adequate, effective, and meaningful" access to the courts.).  *See also Green*, 977 F.2d at 1389 ("The constitutional right of access to the courts is guaranteed by the Due Process Clause[ ] of the . . . Fourteenth Amendment[ ]."); *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) ("the right of access is founded on the due process clause and guarantees the right to present to a court of law allegations concerning the violation of constitutional rights."); *Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir. 1985) (prisoner's constitutional right of access to the courts is accorded by article 4 of the Constitution and the Fourteenth Amendment, as well as by the First Amendment right to petition).

To support a claim for denial of access to the courts, an inmate must show that he suffered an injury caused by "shortcomings in the library or legal assistance program."  *Lewis*, 518 U.S. at 351; *accord Wardell v. Duncan*, 470 F.3d 954 (10th Cir. 2006).  In order to satisfy the actual injury requirement, the plaintiff must show that prison officials frustrated or impeded the plaintiff's ability to file non-frivolous direct appeals from his conviction, a habeas corpus petition or a civil rights claim pursuant to § 1983 "to vindicate basic constitutional rights."  *Lewis*, 518 U.S. at 351, 354-55 (internal quotation marks and citation omitted).  *See also Peterson v. Shanks*, 149 F.3d 1140,

1145 (10th Cir. 1998) ("To present a viable claim for denial of access to courts, however, an inmate must allege and prove prejudice arising from Defendants' actions."); *Smith v. Maschner*, 899 F.2d at 944 (An inmate alleging interference with legal access must allege specific facts showing that a "distinct and palpable" injury resulted from defendants' conduct.).

Mr. Redmon does not adequately allege or demonstrate prejudice resulting from his lack of access to Florida case law.  Mr. Redmon alleges and argues that he was impaired in "adequately presenting his Petitions and contributed to and proximately caused the DENIALS of Redmon's Petitions in the Florida Courts [sic]."  (*See* Doc. # 33 at p. 17 of 27;  *see also* p. 18 of 27 (alleging denial of access to "out-of-state Caselaw prevented Redmon from the adequate presentation of Petitions in a criminal proceeding . . .")).  Mr. Redmon refers to several case numbers, but does not specify the nature of the nonfrivolous legal claims he was asserting.  (*See* Doc. # 33 at pp. 9-10 of 27).  He does not state or demonstrate facts regarding any missed deadlines, court orders, or nonfrivolous legal issues raised in the referenced cases.  Mr. Redmon later clarified that he filed SC09-599 in the Florida Supreme Court and that the Court transferred his petition for writ of prohibition to the Florida Fifth District Court of Appeals, where the petition was renumbered as 5D09-1465.  (*See* "Plaintiff's Answer to Defendant's Interrogatories," Exhibit A-10 to Motion (Doc. # 68-10) at p. 2 of 6).  "The Florida Appellate Court denied the Petition. . . ."  (*See id.*).  Mr. Redmon "invoked the Discretionary Jurisdiction of the Florida Supreme Court," which dismissed the case for lack of jurisdiction.  (*See id.*).  *See also Redmon v. State of Florida*, 13 So. 3d 468 (Fla. June 25, 2009) (citing *Stallworth v. Moore*, 827 So. 2d 974 (Fla. 2002)).  Mr. Redmon

9

then filed a petition for writ of habeas corpus in the Florida Supreme Court, SC09-1236, which was dismissed as raising the same issues as Mr. Redmon raised in SC09-599. (*See* Doc. # 68-10 at p. 2 of 6;  *Redmon v. State of Florida*, 23 So. 3d 712 (Fla. Sept. 14, 2009)).  Mr. Redmon clarified that "[a]ll of these Petitions and Motions, either stem from, or are directly a result of the Actions of the State of Florida in Case No. 2003CF1920," the lower tribunal's case number in SC09-599 and SC09-1065.  (*See* Doc. # 68-10 at p. 2 of 6;  13 So. 3d at 468;  23 So. 3d at 712).  Mr. Redmon states that "[i]n 2003CF1920, [he] was acquitted of the charges and placed on period of Conditional Release which Redmon did not meet the Statutory Criteria to be placed on.  Eventually, in February, 2010, Redmon was able to secure a release from this Florida Supervision." (*See* Doc. # 68-10 at p. 2 of 6).  Mr. Redmon's own evidence thus demonstrates that he was able to file documents in his Florida cases, received a favorable resolution in Florida case number 2003CF1920, and was released from the Florida supervision he was challenging.  Mr. Redmon does not allege or demonstrate that the Florida cases were used as aggravating factors in a sentence imposed by a Colorado court.  Mr. Redmon does not establish that the lack of access to Florida case law impaired his access to the courts or caused him any actual injury.  Summary judgment is properly granted in favor of Defendants on Mr. Redmon's Claims Six, Seven, and Ten regarding denial of access to Florida case law.[2]

---

[2]      In Claim Seven, Mr. Redmon alleges violation of his right to due process under the Fourteenth Amendment, based on the same facts and circumstances that give rise to his claim for denial of access to the courts.  Mr. Redmon does not specify whether he is alleging a procedural or substantive due process claim.
        Substantive due process claims cannot be raised where those claims could be brought under other constitutional amendments or provisions that provide the specific

2.     Legal Mail Restrictions (Claims One, Two, and Three)

In Claims One, Two, and Three, Mr. Redmon alleges that Defendant Zavaras

"authoriz[ed] CDOC policy" requiring attorneys to place their attorney registration

number on the envelope when sending mail to an inmate.  (*See* Doc. # 33 at pp. 14-16

of 27).  Defendant Zavaras is the only Defendant remaining in Claims One, Two, and

Three.  CDOC Administrative Regulations require that incoming prisoner mail, if from a

law firm, paralegal, legal organization or attorney, shall include the sending attorney's

first and last name, attorney registration number, and complete business address.  (*See*

Administrative Regulation ("AR") 300-38(IV)(B)(1)(d), "Offender Mail", Exhibit A-2 to

---

legal tests and standards for addressing those claims.  *Albright v. Oliver*, 510 U.S. 266,
273 (1994).  "Where a particular amendment 'provides an explicit textual source of
constitutional protection' against a particular sort of government behavior, 'that
amendment, not the more generalized notion of substantive due process, must be the
guide for analyzing these claims.' " *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 395
(1989)).  *See also United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997) (It is well
established that "if a constitutional claim is covered by a specific constitutional provision
. . . the claim must be analyzed under the standard appropriate to that specific
provision, not under the rubric of substantive due process.").

Mr. Redmon's due process claim adds nothing to his case.  There is no reason to
believe that a jury would find in his favor on his due process claim and against him on
his claims for denial of access to the courts, as they are based on the same allegations.
Nor is there reason to believe that the damages available to Mr. Redmon would differ if
awarded on a due process claim rather than a First Amendment claim.

As Mr. Redmon's due process claim is based on the same allegations that give
rise to his claims for denial of access to the courts, the underlying allegations are
properly analyzed under the relevant standards for a First Amendment claim, rather
than standards that govern a claim for substantive or procedural due process.  *See
Valot v. Southeast Local School Dist. Bd. of Educ.*, 107 F.3d 1220, 1226 (6th Cir. 1997)
(noting that right of access to the courts is sometimes construed as stemming from the
Due Process clause of the Fourteenth Amendment, and that where courts instead find a
violation of the First Amendment Petition Clause, they decline to consider duplicative
claims under the Fourteenth Amendment).  Consequently, because the court
recommends that summary judgment be granted on Mr. Redmon's claims for denial of
access to the courts, the court further recommends that summary judgment be granted
on his due process claim.

Motion (Doc. # 68-2)).  Incoming prisoner mail not satisfying the attorney identification number shall be returned to the sender.  (*See* AR 300-38(IV)(B)(1)(e)).

Mr. Redmon alleges that Defendant Zavaras "is the Executive Director of the Colorado Department of Corrections and a State Employee." (*See* Doc. # 33 at p. 3 of 27;  *see also* Aristedes W. Zavaras Biography, Exhibit A-7 to Motion (Doc. # 68-7); Affidavit of Aristedes Zavaras, Exhibit A-8 to Motion (Doc. # 68-8)).  As Executive Director, Defendant Zavaras oversees the operations of CDOC.  (*See* Doc. # 68-8). The only allegations regarding Defendant Zavaras are that he authorized "CDOC policy" that required attorneys to place their attorney registration number on mail sent to offenders incarcerated in CDOC and that he failed to authorize CDOC policy that would have allowed Mr. Redmon to receive case law from jurisdictions outside the State of Colorado.  (*See id.* at pp. 14-18 of 27).

Individual liability under § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility.  *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) (individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation) (citation omitted);  *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (personal participation is an essential allegation in a civil rights action) (citation omitted);  *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim.").

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) (citation omitted).  *See also Serna v. Colorado Dept. of Corrections*,

455 F.3d 1146, 1151-52 (10th Cir. 2006) ("There is no concept of strict supervisor liability under § 1983."); *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1290 (D. Colo. 2009) ("*respondeat superior* is not within the purview of § 1983").  "Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights." *Serna*, 455 F.3d at 1151-52.  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948.  There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. *Serna*, 455 F.3d at 1151-52. *See also Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim, affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial").

Mr. Redmon's allegations against Defendant Zavaras are based on nothing more than his supervisory capacity and amount to no more than *respondeat superior* liability. Mr. Redmon attempts to hold Defendant Zavaras liable as authorizing and not authorizing CDOC policies.  Mr. Redmon has not alleged that Defendant Zavaras had any specific knowledge of his circumstances.  The evidence demonstrates that Defendant Zavaras had no knowledge of or involvement with the violations claimed by Mr. Redmon.  (*See* Doc. # 68-8).  There is no evidence in the record that Defendant Zavaras created the policies that Mr. Redmon alleges violated his civil rights or personally applied the policies to Mr. Redmon.  Mr. Redmon argues that Defendant Zavaras should be held liable because he "signed his name to the policy as the person

13

authorizing the use of the policy." (*See* Doc. # 79 at pp. 3, 9 of 67;  *see also* p. 4 of 67

("The policies do not exist without the signature of Defendant Zavaras.");  p. 13 of 67

("Redmon must ask the question of: 'Who has approved these policies?'  The answer

must be Defendant Zavaras.")).  There is no genuine issue as to whether Defendant

Zavaras was personally involved in imposing the policies at issue or was a moving force

behind those policies.

     Mr. Redmon's allegations are no more than conclusory and are insufficient to

support personal participation by Defendant Zavaras.  *See Whitington v. Ortiz*, 307 Fed.

Appx. 179, 191 (10th Cir. Jan. 113, 2009) (holding complaint failed, "except for

conclusory allegations, sufficiently to allege the necessary direct personal participation"

by former Executive Director of CDOC in the claimed injury).  Mr. Redmon's allegations

do not support a claim that Defendant Zavaras had any direct involvement in, personal

participation in, or direct supervisory liability for the alleged violations of his civil rights.

Defendant Zavaras is thus entitled to summary judgment in his favor on all the claims in

which he is named, that is, Claims One, Two, Three, Six, Seven, Nine, and Ten.  As

Defendant Zavaras is the only Defendant remaining in Claims One, Two, Three, and

Nine, summary judgment is properly granted on Claims One, Two, Three, and Nine.

     Further, Mr. Redmon does not demonstrate that CDOC's mail policy violated his

civil rights.  Mr. Redmon alleges that some of his incoming correspondence from

attorneys in Florida and an attorney in California was rejected pursuant to AR 300-38,

which requires that attorney mail be "clearly marked" and include the sending attorney's

name, registration number, and business address.  (*See* Doc. # 68-2 at p. 4 of 10).

There is no allegation that these attorneys represented Mr. Redmon in any legal

proceedings.

The First Amendment protects a prisoner's right to receive mail. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). That right does not prohibit prison officials from inspecting mail for security purposes. *Id.* "In the case of unprivileged incoming and outgoing prison mail, regulation by prison officials is essentially an administrative matter in which the courts will not intervene." *United States v. Gordon*, 168 F.3d 1222, 1228 (10th Cir. 1999) (internal quotation marks and citation omitted). For mail to be treated as privileged legal mail, the state may require letters from attorneys "to be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment. It would also certainly be permissible that prison authorities require that a lawyer desiring to correspond with a prisoner, first identify himself and his client to the prison officials, to assure that the letters marked privileged are actually from members of the bar." *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974). The phrase "the letters marked privileged" indicates that the Supreme Court contemplated that not all letters from attorneys would be privileged, and those that are confidential must be specially marked. *Harrod v. Halford*, 773 F.2d 234, 235 (8th Cir. 1985).

Mr. Redmon alleges instances when mail was rejected from attorneys in the course of "his efforts to locate a Florida attorney." (*See* Doc. # 33 at p. 7 of 27). First, such mail did not fall within the definition of privileged legal mail under CDOC regulations. *See Cotner v. Knight*, 61 F.3d 915 at * 7 (10th Cir. 1995) (Plaintiff's letters to attorneys soliciting representation for his legal problems did not qualify as privileged legal mail under regulations). Second, the mail policy is well within the scope of *Wolff v.*

15

*McDonnell.*  Third, a plaintiff "must show that non-delivery of his legal mail resulted in actual injury by frustrat[ing], imped[ing], or hinder[ing] his efforts to pursue a legal claim."  *Simkins v. Bruce*, 406 F.3d 1239, 1243 (10th Cir. 2005) (internal quotation marks and citation omitted).  The legal claim affected must be one that either directly or collaterally attacks plaintiff's conviction or sentence, or one that challenges the conditions of his confinement.  *See id.* at 354-55.  Mr. Redmon asserts that he "was advised by other CDOC Staff to omit the word 'attorney'" and "then this mail was processed by the CTCF Mailroom."  (*See* Doc. # 68-10 at pp. 2-3 of 6).  Mr. Redmon does not establish denial of access to the courts.  In sum, there is no constitutional violation.  For this reason also, summary judgment is properly granted in favor of Defendant Zavaras on Claims One, Two, and Three.[3]

### 3.    Equal Protection (Claims Eight and Nine)

In Claims Eight and Nine, Mr. Redmon alleges that Defendants Holst and Zavaras violated his Equal Protection rights because he was denied out-of-state case law while other offenders have access to case law.  (*See* Doc. # 33 at p. 18 of 27).  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

---

[3]    To the extent that Mr. Redmon alleges violation of his Sixth Amendment rights (*see* Claim Six), the Sixth Amendment provides certain rights "[i]n all criminal prosecutions."  U.S. CONST. Amend. VI.  Mr. Redmon does not adequately allege any basis for his Sixth Amendment claim, *i.e.*, right to criminal counsel, Confrontation Clause, speedy trial, etc.  Mr. Redmon does not allege that any Florida or California attorney actually represented him.  Mr. Redmon has not alleged or established any facts linking Defendants' conduct to any Sixth Amendment violation or indicating how Defendants' actions restricted or infringed upon his protected Sixth Amendment rights.

essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  The challenged disparate treatment must be the result of purposeful discrimination.  *Harris v. McRae*, 448 U.S. 297, 323 n. 26 (1980).  To properly allege an equal protection claim, a plaintiff must plead sufficient facts to "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

Mr. Redmon has not demonstrated that he was treated differently than any similarly situated inmates.  *See Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1988) ("In order to assert a viable equal protection claim, [Mr. Redmon] must first make a threshold showing that [he was] treated differently from others who were similarly situated to [him].");  *Jennings v. City of Stillwater*, 383 F.3d 1199, 1215 (10th Cir. 2004) (plaintiff bears the burden of proof on this issue).  *See also Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994) ("Absent a threshold showing that [he] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim.").  An equal protection claim is entirely conclusory and without merit where a plaintiff fails to allege facts that he or she was treated differently than those similarly situated.  *Cosco v. Uphoff*, 195 F.3d 1221, 1222 (10th Cir. 1999).

The evidence shows that Mr. Redmon was denied Florida case law because the litigation he sought to pursue did not relate to any enhancement of his Colorado sentence.  (*See* Doc. # 68-11).  *See also Petrick*, 11 F.3d 991, 995 (10th Cir. 1993)

17

(finding injury where plaintiff unable to consult out-of-state legal materials to formulate collateral attack on prior out-of-state convictions that were relied on to enhance his sentence in Oklahoma).   While Mr. Redmon generally and conclusorily alleges that he was denied out-of-state case law while "other Inmates have access to Case law that are relevant to their filings," he has not alleged or demonstrated which inmates were treated more favorably, how other inmates were similarly situated to him, the extent of their access to case law, or the status of their pending legal matters.   (*See* Doc. # 33 at p. 18 of 27).   Mr. Redmon argues that "attorneys sending Legal Mail to Inmates," that is, "those who are not prisoners," are being treated "differently than the rest of the public at large. . . ."   (*See* Response (Doc. # 79) at p. 16 of 67).   Attorneys sending legal mail to inmates are not similarly situated to "the rest of the public at large," much less similarly situated to Mr. Redmon.   Mr. Redmon identifies the "other Inmates in the CDOC" as "specifically Inmates sentenced in Colorado Courts," whereas Mr. Redmon alleges he sough to challenge a sentence imposed by a Florida court.   (*See id.*).   Mr. Redmon's arguments do not establish that he was treated differently from others who were similarly situated.

Nor has Mr. Redmon alleged or demonstrates that Defendants acted based upon a discriminatory intent or motive.   *See Watson v. City of Kansas City, Kansas*, 857 F.2d 690, 694 (10th Cir. 1996) ("A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent") (citations omitted);   *Villanueva v. Carere*, 85 F.3d, 481, 485 (10th Cir. 1996) (Although "[t]he discriminatory purpose need not be the only purpose, . . . it must be a motivating factor in the decision").   Mr. Redmon's allegations are entirely conclusory and he fails to allege or prove sufficient facts to support an equal

18

protection claim.  For these reasons, summary judgment is properly granted in favor of Defendants on Claims Eight and Nine.

C.     PLRA Bars Compensatory Damages

Defendants argue that under the PLRA, Mr. Redmon cannot recover compensatory damages absent proof of a physical injury.  The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of a physical injury." 42 U.S.C. §1997e(e).  An inmate's damages "suit cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms."  *Perkins v. Kansas Dep't of Corrs.*, 165 F.3d 803, 807 (10th Cir. 1999).  The court notes, and Mr. Redmon confirms, that he is not alleging any mental or emotional injury.  (*See* Doc. # 33;  Response (Doc. # 79) at p. 22 of 67).  As Mr. Redmon does not bring any claim for mental or emotional injury, Defendants' argument is inapplicable in this case.

D.     Declaratory and Injunctive Relief

In addition to monetary damages, Mr. Redmon seeks relief in the nature of "[a] declaratory judgment which states that each and every one of the named Defendants has violated the Plaintiff's United States Constitutional Rights." (*See* Doc. # 33 at p. 24 of 27).  To the extent that Mr. Redmon seeks relief for alleged continued violations, he appears to be seeking injunctive relief. (*See id.* at p. 25 of 27).  Actions in federal court seeking injunctive relief against state officials are not always barred by the Eleventh

19

Amendment.  *See Ex parte Young*, 209 U.S. 123, 159-60 (1908) (holding that the

Eleventh Amendment generally does not bar official-capacity claims seeking

prospective injunctive relief from a state official).  *See also Will*, 491 U.S. at 71 n. 10

("Of course a state official in his or her official capacity, when sued for injunctive relief,

would be a person under § 1983 because 'official-capacity actions for prospective relief

are not treated as actions against the State.' ") (quoting *Graham*, 473 U.S. at 167 n. 14).

First, as the court recommends that summary judgment be granted on Mr.

Redmon's claims for failure to demonstrate any constitutional violation, his request for

declaratory judgment "that each and every one of the named Defendants has violated

the Plaintiff's United States Constitutional Rights" must fail.  Second, any claim for

injunctive relief against Defendants in their official capacities is moot as Redmon is no

longer incarcerated.  Mr. Redmon cannot obtain injunctive relief for past constitutional

violations.  *See Barney v. Pulsipher*, 143 F.3d at 1306 (while a plaintiff who has been

constitutionally injured can bring an action to recover damages, that same "plaintiff

cannot maintain a declaratory or injunctive action unless he or she can demonstrate a

good chance of being likewise injured in the future") (internal quotation marks and

citation omitted).

At the time Mr. Redmon filed this lawsuit, he was incarcerated at CTCF.  (*See*

Doc. # 3 at p. 4 of 55, ¶ 1).  He is currently on parole in Denver, Colorado.  (*See, e.g.*,

Docs. # 45, # 30, # 19, # 15 (notices of change of address)).  Mr. Redmon's request for

injunctive relief falls squarely within the mootness doctrine, as any injunctive relief

directed to Defendants would have no practical impact now that he is no longer

incarcerated at CTCF.  *See*, *e.g.*, *McAlpine v. Thompson*, 187 F.3d 1213, 1217-18 (10th

Cir. 1999) ("every circuit to consider the issue has decided that release to parole moots a claim regarding prison conditions and regulations"); *White v. State of Colorado*, 82 F.3d 364, 366 (10th Cir. 1996) (deeming claims for prospective injunctive relief moot in light of inmate's release on parole); *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."); *Perez v. Secretary of Health, Education, and Welfare*, 354 F. Supp. 1342, 1346 (D.P.R. 1972) (a request for injunctive relief is generally moot where "the question presented for decision seeks a judgment upon a matter which, even if the sought judgment were granted, could not have any practical effect upon the parties").

Nor is this the type of claim to which an exception to the mootness doctrine applies, as there is no reasonable expectation, as Mr. Redmon argues, that he will be subjected to this conduct again. *See Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (recognizing exception to the mootness doctrine where there is a "reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party") (internal quotation marks and citation omitted). *See also City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) ("[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality."). Although Mr. Redmon remains in the custody of the CDOC as a parolee, while on parole he can receive correspondence from attorneys without the requirement that the attorney place his or her attorney registration number on the envelope and can obtain any legal cases he may need without restriction. Mr. Redmon's speculative

argument that he could return to prison if his parole is revoked fails to support an exception to the mootness doctrine. "[W]hen an inmate's claim for prospective injunctive relief regarding conditions of confinement becomes moot due to the inmate-plaintiff's release from confinement, the inmate's parole or supervised release status does not, absent some exceptional showing, bring that claim under the narrow capable of repetition, yet evading review exception to the mootness doctrine." *McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (internal quotation marks and citation omitted). *See also Murphy*, 455 U.S. at 482 ("there must be a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party") (internal quotation marks and citation omitted); *White*, 82 F.3d at 366 (Plaintiff's assertion that issue will arise again "if plaintiff's parole is revoked and he is returned to prison, is too speculative to support th[is] mootness exception, which is only to be used in exceptional situations.") (internal quotation marks and citations omitted). Based on mootness, summary judgment is properly granted on any claims for injunctive relief.

E.     Qualified Immunity

To the extent that Mr. Redmon is suing Defendants Zavaras and Holst in their individual capacities, these Defendants raise the defense of qualified immunity. Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 1229 (2008).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.

> Second, . . . the court must decide whether the right at issue was clearly
> established at the time of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation

marks and citations omitted).  "A reviewing court may exercise [its] sound discretion in

deciding which of the two prongs of the qualified immunity analysis should be addressed

first in light of the circumstances in the particular case at hand."  *Id.* "Qualified immunity

is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id.*  "If the plaintiff

fails to satisfy either part of the two-part inquiry, the court must grant the defendant

qualified immunity."  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citation

omitted).  As the court has concluded in this Recommendation that Mr. Redmon fails to

state a claim for violation of a constitutional right by Defendants Zavaras or Holst, these

Defendants in their individual capacities are entitled to qualified immunity from Mr.

Redmon's claims.  *See Wilder*, 490 F.3d at 815 (instructing district court on remand to

enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed

to carry his burden to show violation of a constitutional right).


F.      Failure to Exhaust Administrative Remedies

        Defendants further argue that Mr. Redmon failed to exhaust his administrative

remedies regarding the alleged denial of Florida case law, the basis for Claims Six

through Ten.  In light of its conclusion that summary judgment is properly granted on the

merits of Mr. Redmon's claims, the court does not reach Defendants' argument

regarding Mr. Redmon's failure to exhaust his administrative remedies.

G.      Conclusion

Mr. Redmon has not met his burden on summary judgment to demonstrate a genuine issue of material fact regarding his claims that Defendants violated his constitutional rights.  Summary judgment is properly granted on the SAC based on Eleventh Amendment immunity from monetary damages, failure to show any constitutional violation, failure to show personal participation by Defendant Zavaras, mootness of the request for injunctive relief, and qualified immunity of Defendants Zavaras and Holst.

Accordingly, IT IS RECOMMENDED that "Defendants' Motion for Summary Judgment" (filed January 14, 2011) (Doc. # 68) be GRANTED and that summary judgment on the Second Amended Complaint (Doc. # 33) be granted in favor of all Defendants and against Plaintiff.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate

24

review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado this 16th day of June, 2011.

BY THE COURT:


 s/ Craig B. Shaffer
United States Magistrate Judge